**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JAMES FRAGAKIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 05 C 2741 |
| v. | ) | |
| THE ILLINOIS STATE TOLL HIGHWAY | ) | HONORABLE DAVID H. COAR |
| AUTHORITY and BRIAN MCPARTLIN, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

After being terminated, Plaintiff James Fragakis ("Plaintiff") filed an eight-count Complaint against his former employer, the Illinois State Toll Highway Authority, and its Chief Administrator, Brian McPartlin (collectively "Defendants"). The Complaint alleges denial of administrative review (Count I); seeks a writ of certiorari (Count II) and declaratory judgment or injunctive relief (Count III); and alleges tortious interference with contract (Count IV), breach of employment contract (Counts V), breach of contract related to back wages (Count VI), due process violations (Count VII), and retaliatory discharge (Count VIII). Before this Court is Defendants' motion to dismiss all eight counts for failure to state a claim and time bar.

For the reasons set forth below, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART. Defendants' motion is GRANTED with respect to Counts I-V and Count VII. Defendants' motion to dismiss Count VI (breach of contract – back wages) is DENIED. Defendants' motion to dismiss Count VIII (retaliatory discharge) is GRANTED as

against Defendant McPartlin but DENIED as against the Defendant Illinois State Toll Highway Authority.

I.  **FACTUAL BACKGROUND**[1]

The Illinois State Toll Highway Authority ("the Tollway") is a state statutorily-created agency charged with the administration and maintenance of the toll roads in Illinois. Plaintiff began working for the Tollway in DuPage County, Illinois on November 6, 1978. Though hired as a union employee, he was eventually promoted to a supervisory position. On or about March 11, 1997, Plaintiff was promoted to Building Maintenance Manager in the Toll Services Department. His principal duties were to manage the Tollway's essential operating systems, including its heating, air-conditioning, electrical, plumbing, and mechanical door systems. Plaintiff reported to Robert Smith, Facility Services Manager, who reported to Paul Volpe, Department Chief of Toll Services, who in turn reported either directly or indirectly to Defendant McPartlin. During Plaintiff's career, no disciplinary procedures were ever initiated against him.

Plaintiff received written notification of his termination in a letter dated September 30, 2003 and hand delivered by McPartlin and a colleague. The letter informed Plaintiff that his position was being eliminated due to efforts to reform and rebuild the Tollway. Plaintiff had no warning that he would be terminated.

---

[1] For the purposes of this motion, the facts alleged in Plaintiff's complaint are taken as true.

## II. STANDARD OF REVIEW

The purpose of a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is to test the sufficiency of the complaint, not to decide the merits of the case. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990) (citation omitted). On a 12(b)(6) motion, the Court accepts all well-pleaded allegations in the plaintiff's complaint as true, Fed. R. Civ. P. (12)(b)(6), and views the allegations in the light most favorable to the plaintiff. Bontkowski v. First National Bank of Cicero, 998 F.2d 459, 461 (7th Cir. 1993). The Court should not dismiss a complaint "unless it appears beyond all doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

## III. ANALYSIS

### A. Plaintiff's Contract Claims

Defendants move to dismiss Plaintiff's claim for breach of contract on the ground that Plaintiff is an "at-will" employee who cannot state a claim for breach of an employment contract. Plaintiff argues that the Tollway's Personnel Policy and Procedures Manual ("Manual"), distributed to all employees, creates an enforceable contract between himself and the Tollway.[2]

Illinois law presumes that an employment relationship without a fixed term is terminable at will by either party. See Duldulao v. Saint Mary of Nazareth Hospital Center, 505 N.E.2d 314, 317-18 (Ill. 1987). This presumption is overcome only when the parties have contracted

---

[2] The Complaint incorporates the entire Manual by reference.

otherwise.  Id.  An employee handbook, however, can create enforceable contractual rights if the "traditional requirements for contract formation are present."  Id. at 318.  An employee handbook or policy statement creates a valid contract when: (1) The policy statement's language contains a "promise clear enough" that an employee would reasonably believe an offer has been made; (2) the policy statement is disseminated to the employee in a manner causing the employee know its contents and reasonably believe it to be an offer; and (3) the employee accepts the offer by commencing or continuing to work after learning of the policy statement.  Id.

Plaintiff argues that the revised version of the Manual issued on March 1, 1997 contains the "promise clear enough" required under Illinois law.  According to Plaintiff, the Manual promised that Defendants would use a policy of progressive discipline before terminating him.  Indeed, under Duldulao, a employee handbook containing a clear statement that an employee can only be discharged pursuant to a progressive disciplinary policy *can* create a contractual right.  Id.; see also Wheeler v. Phoenix Co. of Chicago, 658 N.E.2d 532, 535 (Ill. App. Ct. 1995).

Defendants' Manual, however, lacks the very two features that made the handbook in Duldulao satisfy the first requirement for contract formation (i.e., a promise "clear enough" to be considered an offer).  First, the handbook in Duldulao used words demonstrating the "definiteness of the offer."  Id.  The handbook stated that termination "*cannot occur* without proper notice," employees "*are never* dismissed without prior written admonitions," and warnings "*are required* before an employee is dismissed."  Id. (emphasis in original).  The language in Defendants' Manual, by contrast, is far from definite. The Manual states: "It is the policy of the [Tollway] Authority, *where appropriate*, to use progressive discipline . . . .

-4-

However, it is understood that particularly serious or aggravated infractions *may warrant departures* from progressive disciplinary steps . . . ." Compl., Ex. D at 66 (emphasis added). The Manual then outlines "[t]he levels of disciplinary actions *generally* utilized by the Authority." Id. This language indicates that progressive disciplinary procedures are available at the Tollway, but not absolute in application. Accord Hegeler v. The Illinois State Toll Highway Authority, et al., No. 05 C 2739, 2005 WL 2861051, at *2 (N.D. Ill. Nov. 1, 2005). The Seventh Circuit agrees: In analyzing the very policy at issue in the instant case, it noted that "the provisions of the employee manual governing progressive discipline . . . do not require in all cases climbing the first three steps on the ladder before reaching step 4, discharge." Merhab v. Illinois State Toll Highway Authority, 267 F.3d 710, 713 (7th Cir. 2001).[3] Thus, the words of the Manual belie Plaintiff's contention that the Manual promised him the use of progressive discipline "at all times." Compl. ¶ 44.

Second, the handbook in Duldulao "contain[ed] no disclaimers to negate the promises made." Id. at 319. In fact, the Duldulao court noted, the handbook's introduction stated that the handbook's purpose was to clarify the employee's *rights*. Id. Defendants' Manual, by contrast, contains an explicit disclaimer on the first page of the Manual:

> . . . nothing contained in these Personnel Policies is intended or may be construed to create enforceable contractual rights between the [Tollway] Authority and any of its employees or applicants for employment. Except for employees covered by a bargaining contract, the Authority maintains an "at will" employment relationship with all employees . . . . No manager, supervisor, or employee is authorized to enter into any formal agreement or contract of employment on

---

[3] The Seventh Circuit continued: "The-progressive-discipline provisions of the tollway authority's employee manual don't even purport to forbid discharge before the employee has received lesser punishment. Discharge is authorized 'when other corrective measures have failed or if the gravity of the offense warrants it.'" Merhab, 267 F.3d at 713.

>     behalf of the Authority without the express written approval of the Board of
>     Directors of the Authority.

Def.'s Reply., Ex. 1 at 1. Disclaimers like this one "foreclose[] any reasonable belief of contract formation." Boll v. Hyatt Corp., 614 N.E.2d 71, 74 (Ill. App. Ct. 1993). See also Habighurst v. Edlong Corporation, 568 N.E.2d 226, 228-29 (Ill. App. Ct.1991) (describing weight of authority in Illinois as precluding contract formation where handbooks contain disclaiming language).

A disclaimer, if "clear and forthright, . . . is a complete defense to suit for breach of contract based on an employee handbook." Workman v. United Parcel Service, Inc., 234 F.3d 998, 1000 (7th Cir. 2000) (finding the plaintiff's contractual claim extinguished by handbook statement that "this Policy Book is not a contract of employment"). The Illinois cases that have concluded that a handbook is binding despite the presence of disclaimers are not controlling. In Perman v. ArcVentures, Inc., 554 N.E.2d 982, 987 (Ill. App. Ct. 1990), the handbook contained "unequivocal language" assuring employees access to an established grievance procedure. Defendants' Manual lacks such absolute assurances. In Wheeler v. Phoenix Co. of Chicago, 658 N.E.2d 532, 537 (Ill. App. Ct. 1995), the disclaimer was hidden and did not include the "the unequivocal statement that the employee handbook 'is not a contract' or other words to that effect." The front-page disclaimer in Defendants' Manual includes such an unequivocal statement. Finally, the disclaimer at issue in Seehawer v. Magnecraft Electric Co., 714 F. Supp. 910, 914 (N.D. Il. 1989), did not result in judgment for the employer only because an explicit promise elsewhere in the handbook contradicted the disclaimer. Defendants' Manual lacks a similarly explicit promise that would contradict its disclaimer.

Because the Manual contains a disclaimer and does not contain promises about the Tollway's progressive disciplinary policy that could be reasonably mistaken as an offer, it does

not create a valid contract. Plaintiff cannot state a claim for breach of contract or, by extension, tortious interference with a contract. Defendants' motion to dismiss these claims is granted.[4]

### B. Plaintiff's Additional Manual-Based Claims

Defendants move to dismiss Plaintiff's claims for administrative review, writ of certiorari, declaratory judgment and/or injunctive relief, and due process on the ground that, as an at-will employee, Plaintiff did not have a property interest in continued employment that entitles him to relief.[5]

In Illinois, a writ of certiorari and judicial review of an administrative decision are available only if the decision for which the plaintiff seeks review affects his "legal rights, duties or privileges." Buccieri v. Wayne Township, 444 N.E.2d 249, 252 (Ill. App. Ct. 1992). Similarly, a plaintiff seeking a declaratory judgment must posses a "a legal tangible interest." Beahringer v. Page, 789 N.E.2d 1216, 1223 (Ill. 2003). Finally, a plaintiff alleging violation of due process may only prevail if he can establish deprivation of life, liberty or, as alleged here, a property right. Big Sky Excavating, Inc. v. Illinois Bell Telephone Co., 840 N.E.2d 1174, 1186 (Ill. 2005).

---

[4] The Court will not address Defendants' argument that Plaintiff acknowledged in writing that the Manual does not constitute an employment contract. Defendants support this argument with documents that are not contained in or referenced by the Complaint. Moreover, the existence of these written acknowledgments are not central to Plaintiff's complaint. Such "matters outside the pleadings" are not proper for consideration on a motion to dismiss. See Fed. R. Civ. P. 12(b).

[5] Defendants also seek to dismiss the tortious interference with a contract claim on this ground, but this Court has already dismissed that claim.

Plaintiff does not deny that his claims to a legal, tangible interest or a property right are premised solely upon his argument that the Manual granted him enforceable rights to continued employment and progressive disciplinary action. Because the Manual creates no such contractual rights, Plaintiff cannot state a claim for administrative review, writ of certiorari, declaratory judgment and/or injunctive relief, or due process.[6] Defendants' motion to dismiss these claims is granted.

### C. Plaintiff's Breach of Contract - Back Wages Claim

Plaintiff's complaint further alleges that, two months prior to Plaintiff's termination, the Tollway sent him to job training. The Tollway was to pay the training costs so long as Plaintiff did not voluntarily leave the Tollway's employment within two years after completing the training. Plaintiff alleges that Defendants have not only refused to pay Plaintiff for his successful completion of the training, they have deducted the cost of the training from his last paycheck. Plaintiff seeks back wages for this alleged breach of contract.

Defendants first seek dismissal of this claim because, in apparent defiance of a provision of the Illinois civil practice statute, Plaintiff failed to attach to the Complaint the instrument that purportedly binds the Tollway. The Court reminds Defendants that they have successfully removed this litigation to federal court which has no such (procedural) pleading requirement.

Defendants next argue that Plaintiff's "concession" that he did not perform all of the conditions required by the alleged contract (i.e., he did not remain employed by the Tollway for

---

[6] It is no longer necessary, therefore, to address Defendants' arguments that Plaintiff's claims for administrative review and writ of certiorari are time-barred.

two years after the training) forecloses his breach of contract claim. Since the Court can conceive a set of facts supporting Plaintiff's claim for relief on this point, this ground for dismissal also fails. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957) (stating the motion to dismiss standard).

Defendants primarily object to Plaintiff's back wages claim on the ground that Plaintiff cannot meet his burden of establishing the existence of a contract with definite, certain terms. To state a claim for breach of contract in Illinois, a plaintiff must allege: (1) the existence of a valid and enforceable contract; (2) plaintiff's performance of his duties under the contract; (3) defendant's breach; and (4) plaintiff's resulting damages. Priebe v. Autobarn, Ltd., 240 F.3d 584, 587 (7th Cir. 2001). The Court finds that Plaintiff has met his burden of merely alleging *the existence* of a contract that obligates the Tollway to pay for his training costs. The source of the contract is, admittedly, unclear. Specifically, it is unclear whether the alleged contract is separate and apart from the Manual that Plaintiff has previously argued constitutes a contract between himself and the Tollway. If the basis of Plaintiff's back wages claim is in fact the Manual, then given this Court's earlier findings, there is no contract that would afford Plaintiff relief. If the basis of Plaintiff's back wages claim is another, yet-to-be-identified contract, then Plaintiff's claim stands.

Accordingly, Plaintiff is hereby ordered to supplement the pleadings to identify the contract that supplies the basis for his breach of contract-back wages claim. Defendants' motion to dismiss this claim is denied.

D. Plaintiff's Retaliatory Discharge Claim

Plaintiff contends that he was terminated not because of legitimate reform efforts at the Tollway, but because (a) he chose not to associate with or financially contribute to a political party[7] and (b) he refused to authorize a payment to a politically-connected, Tollway-approved contractor for work that was never performed. Defendants argue that neither assertion provides an adequate basis for a retaliatory discharge claim.

Defendants' motion to dismiss the claim is granted with respect to Defendant McPartlin. In Illinois, the employee who carries out the employer's decision to fire is not subject to personal liability for retaliatory discharge. Buckner v. Atlantic Plant Maintenance, Inc., 694 N.E.2d 565, 570 (Ill. 1998). "The only proper defendant in a retaliatory discharge action is the plaintiff's former employer," as the employer alone has the power to hire and fire. Id. The Court, therefore, will consider this claim only as against Defendant Tollway.

To state a valid retaliatory discharge claim, a plaintiff must establish that he was discharged in retaliation for his activities, and the discharge violated a clear mandate of public policy. Dixon Distributing Co. v. Hanover Ins. Co., 641 N.E.2d 345, 400 (Ill. 1994). Illinois courts have construed "activities" to mean exercising a constitutional or statutory right. See, e.g., Beckman v. Freeman United Coal Min. Co., 527 N.E.2d 303, 305 (Ill. 1988); Barr v. Kelso-Burnett Co., 478 N.E.2d 1354, 1358 (Ill. 1985).

Plaintiff alleges that he was discharged for exercising his constitutional right not to affiliate with a political party, and his discharge violated the clearly-mandated public policy of

---

[7] Plaintiff alleges that Defendants wanted to create job openings for members of the Democratic Party and remove employees suspected of belonging to the Republican Party.

freedom of speech and association guaranteed by the First Amendment. "The fact that a constitutional or statutory provision is cited in the complaint, however, does not give rise to a retaliatory-discharge cause of action. The test for determining if the complaint states a valid cause of action is whether the public policy clearly mandated by the cited provisions is violated by the plaintiff's discharge." Barr, 478 N.E.2d at 1357. The public policy mandated by the First Amendment is, according to the Illinois Supreme Court, "that the power of government be restricted." Id. Plaintiff's discharge, if for the reasons Plaintiff cites, would clearly violate this public policy. Indeed, Defendants' Manual establishes that it is a government actor obliged to follow the Supreme Court's holding in Rutan v. Republican Party of Illinois, 497 U.S. 62 (U.S. 1990) that political party affiliation is not a permissible factor in employment decisions for government jobs. See Compl., Ex. A at 5; see generally Rutan, 497 U.S. at 76 ("The First Amendment prevents the government, except in the most compelling circumstances, from wielding its power to interfere with its employees' freedom to believe and associate, or to not believe and not associate); Branti v. Finkel, 445 U.S. 507, 517 (1980) (holding that only if an employee's private political beliefs would interfere with the discharge of his public duties, may the employee's First Amendment rights be required yield to the State).

Defendants' argument that Illinois courts have rejected retaliatory discharge claims based on the public policies associated with political, social, and economic regulation fails. Barr, on which Defendants rely, rejected the plaintiff's claim that his (private) employer discharged him violation of the First Amendment because the First Amendment restricts the power of government, not private individuals. See Barr, 478 N.E.2d at 357. The court in Leweling v. Schnadig Corp., 657 N.E.2d 1107 (Ill. App. Ct. 1995), rejected the plaintiff's retaliatory

discharge claim because it was based on the Interstate Commerce Act, which did not "'strike at the heart of a citizen's rights, duties or responsibilities' nor advance health and safety." Id. at 1111. By contrast, the above referenced Supreme Court cases make clear that First Amendment claims strike at the heart of Plaintiff's rights as a citizen. Accordingly, this Court respectfully disagrees with the analysis in the final case Defendants cite for support. Fowler v. Great American Insurance Companies, 653 F. Supp. 692 (N.D. Ill. 1987), acknowledges that the public policies supporting a retaliatory discharge claim "must relate to the *core of the citizenry's rights*, duties and responsibilities," but nonetheless declares free speech *rights* "essentially social and political in nature" and therefore less likely to support a retaliatory discharge claim. Id. at 696-97 (emphasis added).

Plaintiff has stated a valid claim against Defendant Tollway for retaliatory discharge. Defendants' motion to dismiss this claim is denied with respect to the Tollway.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART. Defendants' motion is GRANTED with respect to Counts I-V and Count VII.. Defendants' motion to dismiss Count VI (breach of contract – back wages) is DENIED. Defendants' motion to dismiss Count VIII (retaliatory discharge) is GRANTED as against Defendant McPartlin but DENIED as against the Illinois State Toll Highway Authority.

Enter:

/s/ David H. Coar
David H. Coar
United States District Judge

Dated: **03/02/06**